We'll proceed with the next case, Sabal Insurance Group. Sabal Insurance, as I said, versus Philadelphia Indemnity. Thank you and good morning. Good morning. Good morning. May it please the Court, my name is Charles Auslander. I'm here on behalf of Sabal Menars, who are the insurers under a Directors and Officers Liability Insurance Policy. The District Court applied Level 3's interpretive principle to hold that when a defendant settles a dropped claim, the settlement is necessarily restitution and demonstrates that the defendant received ill-gotten gains. The short sentence from the opinion that sort of sums it all up from the decision below is that payments made to resolve this claim can only be said to disgorge defendants of property to which they were allegedly not legally entitled. With respect to the District Court, that can't be legally right. First, the Court cannot legally determine based on an unproved allegation that the insurer had received funds it was not entitled to receive, whether mistakenly, innocently, or guiltily, if that is such a word. Here there was an all-pros in the underlying case and the insured was essentially absolved by the state in the course of the settlement. The problem I have with your argument is that a settlement, if you were able to arrange a settlement, you could get insurance recovery for, in effect, ill-gotten gains for defalcations of any sort, things that the law would normally not permit to get a recovery for if it went to full judgment. And so, therefore, the question is whether all of a sudden you can make these events insurable by settling the case and how that plays out against public policy, particularly in Florida, because public policy normally is not to incentivize criminal conduct or to reward it, and that would be the case here. Well, Your Honor, several answers, if I might. Yeah. I'm looking at a holistic, looking at this from a larger perspective. Does it really make sense to have a rule such as the one you're promoting? I understand that you can look at the settlement agreement itself and the word restitution isn't in there and the word punishment isn't in there, but it's basically, it looks to me like some lawyers said, look, if you settle this case, not only will you pay out the money, not only will they get recovery, but you can get reimbursed for it by your insurance company. So isn't that a pretty powerful incentive to settle? And of course, the other side is saying, well, the settlement is a settlement. We're happy to get what we get. Well, Your Honor, I think, in a sense, some of the court's narrative exposes the point, which is that a settlement is essentially a request by both parties here, it was the state and my clients, to not, to in essence, not reach an adjudication one way or the other of responsibility. That would impede your chances to recover under the policy, under the exclusions, for sure. Well, but also, Your Honor, I think, and forget what I hope Your Honor does not think is a divergence from your point, but I would like to hit very hard on the policy point because really, when I think about it, in some respects, this case is no different than what might be considered the more traditional setting of the beneficiary under the insurance policy who allegedly commits the murder of the policyholder. And we all know that sort of tale. But under Florida law, what the insurance company has to do, if the underlying case is nalprost, or if the jury acquits, in order to establish the uninsurability under the law, what the insurance company has to do is proceed with proof by some civil standard in that case in order to prove that the insurer is receiving a wrongdoer's gain or an illicit gain in benefiting from the policy. And that really is where the policy of Florida, Florida state law, stands to this day. And in fact, the- Is there an answer to this question that's readily accessible in Florida law? I don't- I had trouble finding something at least directly on point. I think that there are things that are indirect, but suggestive. But is there a clear answer under Florida law to this question? Well, Your Honor, I'll acknowledge that I tried to be remarkably persuasive on the point, and I spent a lot of pages arguing to the court. But I do not think that there's a precise answer. There is the Mitchell case from the third district, which is really the closest case, which says that there was a conviction or a plea of guilty in that case. There was a, there was an acknowledgement by the district court of appeal that the, that the claim was a restitutionary claim under the policy. And despite the guilt of the insured, restitution was awarded. And that really is the, that case plus the two sets of cases, the one that I responded to Judge Walker with in terms of policy. The traditional homicide life insurance case. And also the cases that really established that the, once the insured presents a prima facie claim under the policy, the insurance company has to come back with proof, not merely an allegation that existed and was in fact not crossed and can never be brought again. Uh, those are the three pieces that I would apply to your honor to say that reason I raised the question is the question is an important one. Is it sufficiently unclear in Florida law suggesting that it, perhaps we should certify the question? Well, I, uh, I sent, I had a sense that the court might've asked, might ask that. I will say to you for myself, I'm extremely loath to do that. If we can find an answer or come up with a pretty good prediction of how the law will go in Florida, but does it make sense here is what I'm asking you? Well, um, the short answer is that it is, it is certainly reasonable to certify the question to the Supreme court of Florida. Uh, that said, I think that there is a strong undercurrent in Florida law that settlements, adjudications without a determination of liability are highly regarded just as, as they are in the cases we've cited from other states and that there's no reason to, uh, diverge from that principle in order to, uh, take a case like this one where the insurance company is proceeding merely on an allegation that no longer exists and thereby characterizing any payments that were made as restitutionary in character. Is there, is there a case directly on point in the state of Florida? No, there does not appear to be. What, what do you do with, um, Ranger insurance against Bell Harbor, which sets forth a general policy, public policy here. Uh, so what our contract is, is our insurance is contrary to public policy and looking at it really two factors, uh, conduct, whether the conduct of the insured would be encouraged, uh, or rewarded, uh, by this insurance, by this insurance. And secondly, whether, uh, the purpose served by the imposition of liability for that conduct is, uh, is to, um, compensate used to deter conduct or to compensate victims. It seems to me that if you look at these, at these factors of that particular case, one could come to the conclusion here that the settlement, uh, is violates public policy under Florida and therefore would be uninsurable. Uh, tell me, tell me where I might be wrong on that. Well, your honor, um, and I don't want to be as shameless as to say the court is wrong, but I'll, I'll dispute the court's position on that. The first prong of range. I'm just, uh, asking a question. Fair enough. The first point of Ranger, uh, that the wrongdoing is of the type that will be encouraged by insurance, uh, really is not per se applicable. I would argue in a, in a case where there is a, a long heritage of criminal conduct, uh, that is, that is cheaply punishable by incarceration fines and restitution incident to a conviction or a plea of guilty. So that, uh, much as the argument we've made with respect to the, the overindulgence of the moral hazard, uh, argument in, in traditional insurance law, uh, here, uh, it is, it is not likely that the, the crime of grand theft or some other felony will be encouraged by insurance. And so we would really urge, I would urge that the, the first element of talking about grand theft by, uh, holding up a truck, we're talking about a sophisticated business, uh, over billing and, um, uh, with an, with a DNR insurance policy in place. Uh, and, uh, so this is a business calculation and part of the business calculation is to understand the, the, uh, uh, insurer insurance picture as well. Wouldn't, wouldn't want to think about that. I mean, by DNO, go ahead, we can vote for this and we can, we can condone it. Certainly your honor, the, the insurance, the insured here was, was balancing, uh, it's, it's belief in its own innocence against the need, like, like businesses do to sustain, maintain their reputation, to maintain their clients, et cetera. But that doesn't mean that the, the allegation, uh, and, and again, your honor, I have to push back on the assumption that the allegation was proved in any way, shape or form here. Well, let's suppose what you have, Mr. Auslander, is the following. A defendant is charged in federal court by a federal grand jury, which means there's probable cause. State court here, your honor. But I just take my case. Grand jury charges a defendant with multiple acts of fraud. Stockbroker rips off 15, 20, 30 clients in a variety of ways and government indicts them for it. The losses exceed a million bucks is a policy. Um, there's no final adjudication of the criminal charge. The defendant goes to the prosecutor and says, I deny any liability here, but I'm going to make these 15 people whole. I'm going to write them a check, which amounts to the claimed loss, um, to settle this whole thing. Prosecutor says, well, I'm more interested in making these victims whole than I am in litigating the question of an agreement reached between the two. Characterize it any way you want. The government agrees to drop the charges. The defendant agrees to pay a million bucks to 15 victims. Wouldn't it violate public policy to then allow that, call it restitution, call it what you want. That's something to be covered by an insurance policy, that it would be reimbursed by an insurance policy. You understand the danger here. There's no adjudication in the hypothetical I've given you. On the other hand, there is a charge. But your honor, I will answer your honor's question. But in the balance, of course, hangs also the danger of essentially the court as it did here, making the claim for the state that was dismissed and then indeed making the case for the insurance. Oh, I think you're dead right that there's a tension here between failing to fully adjudicate the problem, uh, and making them whole. There's no question there's a tension here. But why then, given the balance that the policy stands for, and again, let's dispense with the red herring that we are arguing that the settlement binds the insurance company. The insurance company could have tried to prove that this was uninsurable under the law by doing something more than simply bringing a claim that had been dismissed. That traditionally happens under Florida law. Back to my beneficiary of the murder. Yeah, right. But framing the question more sharply, really, under the rubric that Judge Walker was suggesting, if you looked at Ranger, if I allow the restitutionary payment for the allegedly ill-gotten gains, don't I encourage precisely the kind of conduct I want to discourage? I don't think in reality, your honor, I don't think that I, I, I, I genuinely do not think, and, and this is why perhaps it goes back to loops back to your honor's point about certifying a question and allowing the Florida Supreme Court with all due respect to decide such a policy issue. It does not seem that the, that the, the alleged doesn't deter allegedly bad conduct. I mean, the Supreme Court looks to two things. They talk, talk about deterrence on the one hand, and they, they talk about the need to compensate the victims. Those are the policies they actually- Or deter wrongdoers. Right. So once again, we're stuck back in the same rubric and the notion being that how do you apply Ranger faithfully when Ranger is a case where the wrongdoing of religious discrimination was properly assumed by the record and there's no such record here. I see that my time is- Let me just say one thing. As I understand the calculations that occurred here, you've got $180,000 that is, corresponds with the amount that could be recovered subject to the excluding the amount, larger amount that, that would, could be recovered if the statute of limitations was not applied. So this is within the statute of limitations period. That's 180, and that's also part of the component of this. And then you have the $20,000, which is a payment to the airport investigators. I guess they were the ones who did it. Investigators. Investigators. And then you also have another, another 100,000, which is paid to the Diane Moon Memorial Fund. That raised a question in my mind, and I'm going to ask your adversary about that. How could that be restitution? But in any event, we have various numbers that we can look at that seem to correspond to the numbers that were at issue in a criminal case. And, and Your Honor, forgive me if I say it, but it is, it is not the proper place, with all due respect, for the district court to have played 13th juror and drawn surmise from a dismissed claim and a settlement. Because again, that is precisely if, if that was the tack that the insurance company was to take to prove that this, that the uninsurable under the law clause, but the coverage provision applied, then that was their responsibility to go forward and make that case rather than... It's also part of the general analysis of public policy here, whether there was, whether there's an incentive and also compensation at deterrence aspect is. It was, the settlement was approved by a court, and it was, it was, so it wasn't the result of an adjudication in a criminal case, but it was approved by a court. And it seems to me under those circumstances, you have, you have a, you know, a component in a way of imposition by the court on this particular amount. Granted, it's a loose analogy. It's not an imposition as a It just seems to correspond to the, to the criminal charges is what I'm saying. Your Honor, the, the numeric correspondence, I can't argue with that, but what I can argue with is that when parties come to a settlement, the way it generally works and the way it generally works is plaintiff says, you owe me money and, and, and you have to pay it. Defendant says, I don't owe you money and I'm not going to pay it. Except there's a difference. The difference here, Mr. Oslander, is it's not a war between two private parties alone. There's something overlaying that and you have a charge. Was the charge leveled by a grand jury in the state or just there was information filed by the prosecutor? Suppose a grand jury, to go back to the hypothetical I began with, issued a charge founded on probable cause. There was no ultimate adjudication because they settled the case like I said. Would that provide some proof? Now, if it was a jury there, I would tell the jury in a criminal case that the indictment affords no inference of guilt. It's simply a piece of paper that means by which you come into court. On the other hand, if I was asking the question for different purpose, probable cause finding by a grand jury might have some evidentiary value to me. Is there any evidentiary value to be drawn from the fact that there was a charge, criminal charge, albeit framed by the state attorney rather than by a state grand jury? No. No. An allegation that is dropped is an allegation of probable cause that is dropped. Null trust means in some cases that the state deemed the evidence insufficient to go forward. We don't know the answer to that because the purpose of a settlement in part is to resolve matters without a merits determination. And while your honor takes me back to my old days as an assistant federal defender in this district, I can say that many times we would argue to dismiss indictments for various reasons and I do not recall an argument made that the indictment itself was proof of the defendant's guilt. Thank you. Thank you, your honor. May I place the court? My name is Kirk Jenkins and I represent the Appellee Philadelphia Indemnity Insurance Company. I'll begin with a very short thought and then proceed to answer three of the panel's questions from the opening remarks. Your honors, Ian Norris stole $416,000 dollars from the Miami-Dade Aviation Department. He got caught and ultimately to buy his way out of jail, had to pay back the inspector general's words, not mine, most of the money that he had stolen. He's now trying to get my client to reimburse him for that. Your honors, ensuring the retention of profits from wrongdoing. Of the total sum of $303,000, as Judge Walker pointed out, $183,803 was the payment to the MDAD, but $100,000 went to this Moon Memorial Fund and $20,000 for costs of investigation. That would not be restitutionary in nature, would it? The only thing that would be arguably restitutionary would be the $183,000, right? Well, your honor, a couple of answers. Number one, another one of the exclusions is payments that are in the nature of a penalty, and I think that would qualify, but we have two responses on the Moon. That's in the law's definition, right? It's one of the exclusions from the definition of law. Yeah, and so you're saying that the balance would be in the nature of a penalty? Yes, and we have to go back. Rather than fixating on the word restitution, we have to go back to language of the policy, which doesn't say restitution. It says loss is what you have to have. Specifically on the subject of Moon, we have two answers. Number one, my opponent has not cited a single case which has ever held that money paid to a charity can be an insurable gain. And number two, once again, the language of the policy is loss. How on earth, even if this were a bona fide charitable donation, how on earth does a donation to a charity constitute loss for any insurance policy? So those are our responses. In addition to that, I think you could also point out that this wasn't really a donation because it wasn't voluntary, and any tax deductibility was removed. Absolutely correct, your honor. So this was part of the settlement. It does seem to me, at least arguably, to smack us as more of a penalty if it's not a direct restitution. It wasn't a restitution because the Booth Fund was not injured in this in any way, right? That's correct, your honor. But we argue that it's still not a loss under the policy for the other reasons that I discussed. What about the 20,000 investigative costs? We would make much the same argument. Number one, it is in the nature of a penalty. Number two, all of those other... There you are restoring money. It wasn't ill-gotten from the investigators, but you are restoring, making them whole. And that was incidental to the investigation. So their investigation was incidental to uncovering the wrongdoing. So it's closer to restitution than the 100,000. It is closer to restitution. And on the issue of penalty, we would point out that it is a fairly routine thing in a criminal case. You're sentenced to this and you've got to pay back the costs of investigation, which also speaks to the question of whether it's a penalty. Judge Marcus, you asked a question about certifying this issue. Our view is that Florida law is clear on this, and we would point to two different sources of Florida law. Number one, most prominently the Ranger case, and number two, the CNL case from this court, which admittedly was unpublished, but we read to be clearly decided under Florida law. The third question that was raised is specifically on the subject of the Ranger case and the application of that public policy test, which Judge Walker correctly stated as being number one, making this insurable encouraged more of the conduct, and number two, is the purpose of this to deter wrongdoers or compensate victims. Your Honor, we believe the answer is emphatically that any insurance here, and I'll explain in a moment why it's not covered, but any insurance here would be a violation of public policy, first of all, is exactly the hypothetical. Perhaps it comes out sounding a little facetious, but my point and what I'm about to say is there is no logical reason stopping point between the insurance position here, which is, oh, well, we didn't actually do this, versus the hypothetical that comes straight out of level three. Judge Posner said, what about an insurance that knows perfectly well that he did it, and he reads the handwriting on the wall, and he goes to the prosecutor and says, tell you what, I'm going to pay back all the money that you're accusing me of stealing, or my insurance company is going to pay back all the money that you're accusing me of stealing, just drop the possible jail term. It's a win-win for everybody. Now, I understand they say that they didn't actually do it, but there is no logical stopping point if this isn't a violation of public policy between this case and that case. Does that encourage theft? Of course it encourages theft, to be able to get the money back. Going back to level three, does it matter that the level three does not discuss exclusion policy like we have here? Does that matter? No, it doesn't, because I'll get in a minute, there is a purpose for that exclusion here, but the level three, the argument that I was discussing is really a public policy argument. The argument you're making is the basic argument that you've made in Ranger Insurance. You're using level three to say the same thing that the court said in Ranger. That's correct. So, looking at level three, I wondered whether or not that was as much on point as your argument is, because there was no exclusion policy. Under Florida law, we would argue that it is exactly on point. On this point, we argue that Florida law is very clear about this. Florida law says you begin with the insuring agreement and determine is this arguably covered or not. If the answer is yes, this is covered, then you move to the exclusion. An exclusion cannot manufacture coverage where it doesn't exist under the policy itself. And as for the argument that, oh, well, they have to be read together, the exclusion is not read out of this policy by our argument by a long shot. The reason for this language about you have to go all the way to an adjudication before you have to pay us back the defense costs is exactly that. If it turns out to be ill-gotten gains, well, that's another thing. But to lose the defense costs, you have to go all the way to an adjudication. That's exactly why we have quite properly never sought the return of the substantial defense costs that we paid here, because there was no final adjudication. Therefore, under those exclusions, we're not entitled to it and we haven't asked for it. What would your response be to counsel's argument that you should have come forward with some evidence at one point? And then the Judge Walker's question of counsel, well, can't we just look at the settlement itself and look at the numbers and how they correspond with the theft? What would your response be? I agree regarding the numbers, which I'll get to in just a second. But the argument that we have to come forward with the proof is not what the case law says. There are any number of cases involving settlements, including C&L Hotels, Level 3, and several others that involve the settlement, no adjudication of wrongdoing. C&L, you know, that was a land of that case. And so, doesn't that put that in a little different posture? I'm talking about this case where all we have is the settlement and we have an information that was dismissed. And so, can we look at the settlement amounts and say, this is beyond suspicion, this will support the fact that the settlement was for restitution? The answer is yes, Your Honor. And the amounts are important. Of the $416,000, the so-called settlement was an initial payment of $188,007, the exact amount to the penny that the prosecutor accused him of stealing, and another $143,000 in various other funds. In other words, and this is important, the state literally did better, much better by six figures in getting the money back here by, quote unquote, settling this case than they could have by going to trial. And that brings us back to Judge Posner's comment in Level 3. No one pays everything that an opponent is asking for without some evidence of wrongdoing. That's not a rational thing to do. You do not settle a nuisance suit for the full amount demanded in the complaint. So, is that some evidence that there was something here? Absolutely, Your Honor. The language here of the policy limits loss to damages or defense costs. It does not include matters deemed uninsurable under the law, fines or penalties, or amounts as a result of a claim seeking relief in something other than monetary damages. We would point the court, I know you're familiar with the briefs, but we would point the court specifically on that policy issue, the Twin City Fire, C&L Hotels, Level 3, and especially Republic Western. Republic Western involved an attorney who had initially gotten a retainer, and it's important because when he initially got it, there was nothing wrong with him having it. He or she, I don't recall, the attorney having it. It became wrongful when it became clear that the attorney couldn't do it anymore, couldn't do the work anymore. And the court said, it doesn't matter, that's a restitutionary payment and it's not insurable. Briefly on the subject of Mitchell, Your Honor, all the Mitchell case illustrates here is that restitution can be used in different contexts around the law. It doesn't necessarily mean the precise same thing every time. There we had an insured who had literally run into a reef and he was asked to pay what the local statutes call restitution, but what it was is you damaged our property and we'd like you to pay for it. It was a straight, ordinary run of the mill equivalent to a tort claim. So Mitchell, I think, tells us nothing for this case. The second point on the subject of Ranger and public policy is the purpose of the payment to deter wrongdoers or compensate victims. Well, the plaintiff here says, well, we just wanted to get rid of the case, even though we were paying even more than we would have if we'd gone to trial. But subjective motivation is not the issue here. Here, this Ranger, the Florida Supreme Court frames the question this way. Does the public policy of Florida prohibit an insured from being indemnified for a loss resulting from an intentional act of religious discrimination? Was there ever an underlying adjudication of the question of whether there was an intentional act of religious discrimination? Did that ever get resolved even on trial? My recollection is no, Your Honor. Okay, but I'm not absolutely certain of that. I apologize, but my recollection is no. Briefly, my opponent speaks of the cases Gallup and U.S. Bank, a district court decision from Minnesota and a state trial court decision from Delaware, as we explained in the briefs that are distinguishable for a variety of reasons. And even if they weren't, and we believe they are, they're irreconcilable with Florida law that exclusions cannot create coverage. Your Honor, in addition to the public policy issue that we discussed, there is another public policy issue here of the notion that you would enable wrongdoers to recover their money by simply settling the case ahead of time. It invites wrongdoing. It invites manufacturing a settlement to invent coverage, and that's precisely what we see in the drafting history of the settlement in this case. Your Honors, we believe this is a perfectly clear case under the law of Florida and the majority opinion nationwide, and we'd ask the I have one question. This is totally beside, it has nothing to do with the actual decision of the case, but you were defending this case, correct? Two of my former partners were, but yeah. Two of your former partners were defending this case up to a point, but presumably they were not involved in the settlement agreement. We were presented with the settlement agreement 24 hours before it was signed. Right, right, okay. Yeah, okay. Thank you. Thank you, Your Honor. A non-criminal prosecution should not be considered the basis for a finding of fact that a settlement was a restitution for ill-gotten gains. The, to answer your question, Your Honor, the policy in Level 3 was not the same, and surely here any common sense interpretation of this policy would be that a mere allegation of crime does not fit the bill for uninsurability under the law because that would have made the meaningless, the drafting of the exclusion. And certainly the Florida Supreme Court time and again looks at policy terms as a whole in order to interpret whether or not there is or isn't coverage or what the coverage provision means. And again, here we are not saying that we are extinguishing the uninsurable under the law provision. The insurance company has the opportunity, it shouldn't be given a second bite here, but had the opportunity to prove something more than the allegation just like the case of the insurance company that doesn't want to cover the beneficiary insured for the, who wants to collect under the life insurance policy. Your Honor, what I can say about Ranger is that on the face of the case, it appears as if the court at that juncture was assuming that there was intentional discrimination, but it does not appear on the face of the decision that there was an underlying adjudication. There was a settlement of that claim. But notwithstanding that, the Ranger balancing test still applies. Of course, what's interesting about that is it was remanded. And on remand and a subsequent appeal from a grant of summary judgment in favor of the insurance company, the DCA said at no time during the course of the litigation or in any of the appeals that the club raised a genuine issue of material fact on the issue of the intentional religious discrimination. And again, here we would say, Your Honor, that the record substantiates that there is at the very least a disputed fact as to whether or not the allegation actually demonstrates that a crime full of mens rea and scienter and all of that actually transpired. And so here, what happens as a consequence of the district court's decision following level three is that in essence, you have a and level three really says this as you get to the end of the decision. It really isn't the public policy of Florida because what it does is it flips the burden of truth onto the insured to prove essentially that the insured insurance claim is not groundless. You can find that nowhere in Florida law that kind of burden shifting. And in fact, there was nothing stopping the insurance company here from trying to establish by fact that this claim was uninsurable under the law rather than merely using an allegation. The challenges with level three and I think with applying CNL and I do want to pause and say very briefly that there are a number of cases, but the majority of the cases find an independent violation of law. They're not applying a settlement to infer violation of law. And that is in part with what makes the Gallup decision and the U.S. bank decision so critical because they in essence are saying, don't put the cart before the horse. Don't assume that this is restitution for an ill-gotten gain if there's no violation of law that has been established. And here we would have a, I understand the public policy concerns of the court, but we also have the opposing policy concern that this policy would in essence become the purposes of cases that started with a criminal allegation that was dismissed, a defense costs only policy. That is not anywhere in this policy what was bargained a monetary settlement is clearly encompassed as damages unless and until the insurance company substantiates that it was uninsurable as a matter of law. The insurance company failed to do that here. I see that I have to stop. We would ask for a reversal of the district court's decision. And in fact, entry of summary judgment for Sable, not withstanding that if the court is understandably concerned about the status of Florida law, we do think that it is an unanswered question under Florida law that at this court may be wrestling with in part. Thank you. Thank you very much. Thank you both. And we'll proceed to the next case.